O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARLA SAMETH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, LOS ANGELES SHERIFF'S DEPARTMENT, SHERIFF LEE BACA, DEPUTY SHERIFFS V. BAEZA AND YBARRA, SGT. RONALD MARQUEZ, and DOES 1 through 10, inclusive<br><br>Defendants. | CASE NO. CV 10-6565-ODW (RZx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [54] |

**I.    INTRODUCTION**

Currently before the Court is County of Los Angeles (the "County"), Deputy Veronica Baeza ("Baeza"), Deputy David Ybarra ("Ybarra"), and Sergeant Ronald Marquez ("Marquez" and collectively, "Defendants"), Motion for Partial Summary Judgment. (Dkt. No. 43.) After careful consideration, the Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. For

the following reasons, the Court **GRANTS in part DENIES in part** Defendants' Motion.

## II. FACTUAL BACKGROUND

On December 28, 2009, Plaintiff Carla Sameth ("Plaintiff") alleges to have purchased a day pass for the Metro at the Del Mar station in Pasadena to attend her bankruptcy hearing in Los Angeles. Plaintiff purchased the five-dollar fare with her ATM card. She received a receipt and ticket and placed them into her soft briefcase.

After the bankruptcy proceeding, Plaintiff rode on the Metro Gold Line back home. At about 4:00pm, Deputy Ybarra conducted fare enforcement on the train and asked Plaintiff to show her ticket. Plaintiff searched for but could not find the ticket. Ybarra allowed Plaintiff to continue searching for her ticket and obtained her California identification in case he needed to give her a citation for failure to have a valid train ticket. While she continued searching in her soft briefcase, Ybarra checked the other passengers in the train car for valid tickets. Upon returning, Plaintiff produced the receipt for her ticket, but not the actual ticket. Ybarra informed her that the receipt was not a valid form of MTA train fare media and asked her to exit the train to receive a citation.

Then, Plaintiff expressed, at least, some frustration as to the situation. Ybarra told Plaintiff to comply and calm down, lest he give her an additional citation for her behavior. Plaintiff complied and exited the train with Ybarra at the Highland Park station. Ybarra radioed Deputies Anderson and Baeza, who were also conducting fare checks in a different car on the same train, to meet him on the Highland Park platform for assistance. Ybarra also requested Baeza, who is female, to conduct a pat down search for officer safety concerns.

On the platform, Plaintiff continued to search for the ticket. Soon after, Anderson and Baeza joined Ybarra. When Baeza began the pat down search, Plaintiff started feeling uncomfortable and offered some resistance, which Baeza attempted to manage. In the altercation that ensued, Plaintiff's face struck a nearby pole, causing her nose to

bleed. When the deputies observed that she was bleeding, they called for paramedics,

2

handcuffed her, and called for a supervisor to respond to the location. Sergeant Marquez responded to the call because the deputies' actual supervisor, Sergeant Michael Burse was not readily available.

Paramedics arrived shortly, as did Marquez. As they tended to Plaintiff and loaded her into the ambulance, Marquez conducted a brief videotaped interview with her. About the time the ambulance was preparing to leave, Sergeant Burse arrived and took over the investigation from Marquez. The ambulance took Plaintiff to the emergency room at County-USC Medical Center, where she was diagnosed with a nasal fracture. At the hospital, two uninvolved deputies instructed Plaintiff to sign a citation for fare evasion and obstructing an officer. Plaintiff was released around midnight. Plaintiff found the day pass in her briefcase when she returned home.

Based on the foregoing, Plaintiff instituted this action alleging: (1) Deprivation of civil rights pursuant to 42 U.S.C. § 1983 for excessive force, unlawful arrest and detention; (2) *Monell* claim against the County; (3) Violations of California Civil Code §§ 52 and 52.1; (4) Assault and Battery; and (5) Negligence. Defendants now move for partial summary judgment as to Plaintiff's § 1983 claims for unlawful arrest and detention, all claims against Marquez, punitive damages against Marquez and Ybarra, and Plaintiff's claim pursuant to California Civil Code §§ 52 an 52.1.

### III. LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.56©. Evidence the court may consider includes the pleadings, discovery and disclosure materials, and any affidavits on file. Fed. R. Civ. P. 56(c)(2).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the

moving party has met this burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id*. at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

It is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

**IV.  DISCUSSION**

Defendants move for partial summary judgment based on the following arguments: (1) All claims against Marquez should be dismissed because he played no role in the detention, arrest, or alleged use of force against Plaintiff; (2) All claims against Ybarra should be dismissed because he is entitled to qualified immunity; (3) Plaintiff has not alleged facts necessary to support her contention of entity liability; (4) Plaintiff was properly taken off the train and detained in order to be cited for fare evasion; (5) the pat down search was appropriate and incident to a lawful arrest; (6) Defendants are entitled

to qualified immunity for the detention, arrest, and pat down of Plaintiff; (7) Plaintiff's arrest pursuant to California Penal Code § 640(b)(1), and § 148 was objectively reasonable; and (8) Punitive damages are not warranted as to Ybarra and Marquez. In making these arguments, Defendants' main contention is that Plaintiff's arrest and detention were lawful rendering excessive force as the sole basis for her § 1983 claim. The Court addresses Defendants' arguments to the extent necessary.

### A. CLAIMS AGAINST SGT. MARQUEZ

The parties dispute as to whether Plaintiff's claims can be asserted against Marquez. Respondeat superior liability may not be imposed under § 1983, absent a state law imposing such liability. *See Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991). Because California has no such law, a state official must play a personal role in the constitutional deprivation to be liable. *See Redman*, 942 F.2d at 1446. Specifically, a supervisor may be liable if there is either: (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Redman*, 942 F.2d at 1446 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). The causal connection can be established if the supervisor set "in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Redman*, 942 F.2d at 1447 (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Here, it is undisputed that Marquez arrived at the investigation scene after the alleged excessive force occurred. While it is undisputed that he conducted the on scene videotaped interview as the paramedics evaluated Plaintiff, no evidence indicates that Marquez could have been personally involved in the alleged constitutional deprivations. Likewise, no evidence exists showing that Marquez set "in motion a series of acts by others" causing the alleged constitutional deprivations.

Plaintiff disagrees citing *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011). In

1  that case, the Ninth Circuit held that Sheriff Baca could be held "liable in his individual
2  capacity for his own culpable action or inaction in the training, supervision, or control of
3  his subordinates; for his acquiescence in the constitutional deprivation; or for conduct
4  that showed a reckless or callous indifference to the rights of others." *Id.* (citation and
5  quotation omitted). Specifically, the Court agreed with the plaintiff's contention that
6  "Sheriff Baca's knowledge of the unconstitutional conditions in the jail, including his
7  knowledge of the culpable actions of his subordinates, coupled with his inaction,
8  amounted to acquiescence in the unconstitutional conduct of his subordinates." *Id.*

9  Unlike *Starr*, no evidence suggests that Marquez trained, supervised, or controlled
10 the Deputy Sheriffs at the scene. Indeed, he was not their direct supervisor. In addition,
11 no evidence exists indicating that Marquez acquiesced in Plaintiff's constitutional
12 deprivation nor is there an indication that his conduct constituted reckless or callous
13 indifference to Plaintiff's rights. Marquez was called to the scene after the alleged
14 constitutional deprivation because the actual supervisor, Sgt. Burse, was not available
15 at the time of the incident. When Sgt. Burse did arrive, Marquez handed Sgt. Burse the
16 videotaped interview and left the scene shortly thereafter. Hence, Marquez cannot be
17 held personally liable for the alleged wrongdoings, and Plaintiff fails to present triable
18 issues of fact indicating otherwise. Accordingly, the Court **GRANTS** Defendants'
19 Motion as to Marquez.

20  **B.   LAWFULNESS OF THE PAT DOWN SEARCH**

21 The Court finds that there are triable issues of fact with respect to the
22 reasonableness of the pat down search following the initial stop. It is clearly established
23 that an officer may not conduct a "search incident to citation" absent other justification.
24 *See Knowles v. Iowa*, 525 U.S. 113, 117-19 (1998) (noting that the two historical
25 rationales for the search incident to arrest exception are "(1) the need to disarm the
26 suspect in order to take him into custody, and (2) the need to preserve evidence for later
27 use at trial"). Here, while Defendants contend that a pat down search was appropriate,
28 there are disputed facts related to the circumstances surrounding the search. Specifically,

Defendants argue that Ybarra's decision to seek a pat down search was due to Plaintiff's unusual and irrational behavior, attempt to intimidate, bulky clothing, and her repeated acts of reaching in to her large purse and bag. Plaintiff, however, contends, *inter alia*, that she did not raise her voice and did not use any profanity towards Ybarra during the course of the stop. In addition, Plaintiff intimates that she is in her 50's, 5'4", and about 120 lbs. whereas Ybarra is in his late 30's, 6'0", and approximately 200 lbs. Therefore, the Court finds that, viewing the evidence in the light most favorable to Plaintiff, there are triable issues of fact with respect to the legality of the pat down search under the Fourth Amendment.

Defendants also argue that, even if the search following the stop was unlawful, they are entitled to summary judgment based on qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For police officers, the qualified immunity doctrine "recognizes that officers make probable cause assessments in the field under pressure and therefore affords the officer leeway, permitting a reasonable mistake without resulting in individual liability of the officer, when the law is not clearly established." *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223 (2009).

The threshold question is whether, if all factual disputes were resolved in favor of the party asserting the injury, the evidence would show the defendant's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. Because a violation of Plaintiff's rights under the Fourth Amendment could be made out, the next step is to ask whether the constitutional right in issue was clearly established. *Saucier*, 533 U.S. at 201.

The question here is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id*. If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Id*.

The Ninth Circuit engages in a two-part test to determine if the right was clearly established at the time of the allegedly impermissible conduct. *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002). First, it must be determined if the law that governs the official's conduct was clearly established. *Id.* The plaintiff bears the burden of proving that the right was clearly established at the time of the allegedly impermissible conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).

The next question is whether, under that clearly established law, a reasonable official could have believed his conduct was lawful. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871-72 (9th Cir. 1993). The defendant bears the burden of establishing that his or her actions were reasonable. *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995). As discussed above, the law establishing when a warrantless search of an individual is permissible is clearly established. *See Menotti*, 409 F.3d at 1154 (reversing summary judgment granting qualified immunity because "the exceptions to the Fourth Amendment's warrant requirement have been categorically defined"). Therefore, Defendants bear the burden of establishing that their conduct was reasonable. Defendants have not met that burden with respect to the events following the initial stop because disputed issues of fact exist. Accordingly, the Court **DENIES** Defendants' Motion as to this issue.

### C. PROBABLE CAUSE FOR PLAINTIFF'S ARREST

Defendants aver that Plaintiff's arrest for violating California Penal Code § 148 was lawful, and therefore, conducted with probable cause. The length and scope of detention must be justified by the circumstances authorizing its initiation. *See Terry v. Ohio*, 392 U.S. 1, 19 (1968). Thus, when an officer has obtained sufficient information to issue a citation, a continued detention without probable cause to arrest for a crime is unreasonable. *United States v. Luckett*, 484 F.2d 89, 90-91 (9th Cir. 1973) (per curiam) (finding that an individual stopped for jay-walking may be detained "only the time necessary to obtain satisfactory identification from the violator and to execute a traffic citation"); *see also McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) (holding that

arrest requires "objective evidence which would allow a reasonable officer to deduce that a particular individual has committed or is in the process of committing a criminal offense"); *United States v. Jennings*, 468 F.2d 111, 115 (9th Cir. 1972) (holding that, after an initial investigative inquiry on the street is completed, continued detention of an individual for fingerprinting and photographing is constitutionally invalid without probable cause to arrest). In addition, "[p]robable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 966 (9th Cir. 2001) (citation omitted).

In this case, the parties dispute as to whether Defendants had probable cause to effectuate an arrest. Particularly, California Penal Code § 148(a)(1) proscribes willfully resisting, delaying, or obstructing any peace officer in the discharge or attempt to discharge any duty of his or her office or employment. Because the parties dispute as to whether Defendants were engaging in a lawful performance of their duties during the course of the pat down search, there are disputed issues of fact as to whether Defendants had probable cause to arrest Plaintiff for violating § 148(a)(1). Consequently, there are genuine issues of material fact as to whether Defendants violated Plaintiff's Fourth Amendment right against unlawful arrest. Moreover, because these rights, at the time of and in the context of the events at issue, were clearly established, Defendants, and in particular, are not entitled to qualified immunity. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011). Accordingly, the Court **DENIES** Defendants' Motion as to whether Defendants' had probable cause to arrest Plaintiff.

### D. PUNITIVE DAMAGES AS TO MARQUEZ AND YBARRA

Punitive damages are available in an action pursuant to section 1983 when the Defendants conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *E.g., Smith v. Wade*, 461 U.S. 30, 56 (1983). Similarly, California Civil Code section

9

3294(a) authorizes punitive damages where clear and convincing evidence establishes that a defendant is guilty of oppression, fraud, or malice. Cal. Civ. Code § 3294(a). Defendants contend there is no evidence to support an award of punitive damages as to Marquez and Ybarra. Plaintiff does not controvert Defendants' contention. Accordingly, the Court **GRANTS** Defendants' Motion as to this issue against Marquez and Ybarra.

### E. Plaintiff's *Monell* Claim

Local governments are "persons" subject to liability under § 1983 where official policy or custom causes a constitutional tort. *See Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 690 (1978). A city or county, however, may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. *See Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986) (noting that a decision made by an official who possesses final authority to establish policy with respect to the challenged action may constitute an official policy for purposes of § 1983 liability). "The plaintiff must demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged." *Brown*, 520 U.S. at 404. That is, the municipal action must have been taken with the requisite degree of culpability and with a direct causal link to the deprivation of the federal right. *See id.*

Proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of a municipal policy or custom. *See McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000); *Davis v. City of Ellenburg*, 869 F.2d 1230, 1233 (9th Cir. 1989). "When one must resort to

inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

Here, there is a material question of fact whether it is a policy or custom of the County to generally conduct pat down searches of individuals cited for fare evasion. Deputy Ronald Anderson, who was at the scene of the incident, stated during his deposition that he conducts a pat down search on most people that he cites for fare evasion. The question remains whether this conduct may be attributed to the County's policies or custom, whether official or unofficial, the County's lack of training concerning pat down searches, or Deputy Anderson's personal procedure. This incident and Deputy Anderson's testimony indicates there is a question of fact whether the County is a "moving force" behind the Plaintiff's injury. Accordingly, with respect to Plaintiff's § 1983 claim against the County, the Court **DENIES** Defendants' Motion.

### F.   PLAINTIFF'S CLAIM PURSUANT TO CALIFORNIA CIVIL CODE §§ 52, 52.1

As an initial matter, the Court finds that California Government Code §§ 820.2, 820.4, and 820.8 do not immunize the Deputies from liability as Defendants contend. *See Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998). Specifically, § 820.2 "protects 'basic policy decisions,' but does not protect 'operational' or 'ministerial' decisions that merely implement basic policy decisions. *Id.* (citation and quotation omitted). More significantly, "[t]here is no immunity 'if the injury . . . results, not from the employee's exercise of discretion vested in him to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so.'" *Id.* (citation omitted). In this case, Plaintiff's allegations go beyond contending that the Deputies acted improperly in deciding to seek his arrest. Plaintiff alleges further that the Deputies acted negligently and unreasonably in arresting Plaintiff and in the manner in which the investigation was conducted. Thus, § 820.2 does not apply in this case. Likewise, § 820.4 is clear in that the section does not "exonerate[ ] a public employee from liability for false arrest." Further, 820.8 does not "exonerate[ ] a public employee

from liability for injury proximately caused by his own negligent or wrongful act or omission." Accordingly, these California Government Code sections do not apply here. The Court, therefore, addresses Plaintiff's claim.

Plaintiff's claim pursuant to the Bane Act, Cal. Civ. Code § 52.1, survives because the elements of this claim are essentially identical to those of a § 1983 excessive force claim. *Corser v. Cnty. of Merced*, No. 1:05–CV–00985, 2009 WL 174144 at *25 (E.D. Cal. Jan 26, 2009) (citing *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (Ct. App. 1998), and *City of Simi Valley v. Superior Court*, 111 Cal. App. 4th 1077, 1085 (Ct. App. 2003)). As a result, because there are disputed issues of fact with regard to Plaintiff's § 1983 claims for unlawful arrest and because the excessive force claim remains viable, this claim also survives Defendants' Motion. Accordingly, the Court **DENIES** Defendants' Motion as to Plaintiff's claim pursuant to § 52.1 of the California Civil Code.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment is **GRANTED in part and DENIED in part**. Specifically, Defendants' Motion as to Defendant Marquez and Punitive Damages as to Ybarra is GRANTED. As to the remaining issues, Defendants' Motion is DENIED. Accordingly, the Court dismisses Defendant Marquez from this case.

IT IS SO ORDERED.

December 29, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE